PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| EMIDIO CHECCONE,[1] | ) | |
| | ) | CASE NO.  4:26-cv-272 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| IOLE CHECCONE *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | [Resolving ECF No. 4, 5, 6, 7, 8, 12, 13, 16, |
| | ) | and 30] |

This case comes before the Court on Defendant Iole Checcone's Notice of Removal (ECF No. 1) of Plaintiff Emidio Checcone's ("Plaintiff" or "Emidio") Complaint for Declaratory Judgment and Other Relief, originally filed in the Probate Court of Mahoning County, Ohio against Defendants Iole Checcone (individually and as Co-Trustee of the Iole C. Checcone Revocable Trust) ("Defendant Iole" or "Iole"), Anne Marie Checcone (individually and as Co-Trustee of the Albert G. Checcone Revocable Trust) ("Defendant Anne Marie" or "Anne Marie"), and Mark Checcone (individually and as Co-Trustee of the Albert C. Checcone Revocable Trust) ("Defendant Mark" or "Mark").  ECF No. 1, Ex. A.

Now pending before the Court is Plaintiff's Motion to Remand (ECF No. 7), in which he argues that remand is proper under the unanimity doctrine.  Defendants Iole and Anne Marie oppose the motion to remand (ECF No. 14); Plaintiff submitted a reply in support.  ECF No. 24.

---

[1] The docket erroneously spells Plaintiff's first name as "Emiddio."  The Court shall refer to Plaintiff as "Emidio Checcone," consistent with Plaintiff's state-court pleadings and briefs.

(4:26CV272)

Defendant Iole subsequently filed a Motion to Supplement Notice of Removal *Instanter* (ECF No. 16), purportedly addressing Plaintiff's unanimity arguments. Plaintiff opposes the Motion to Supplement. ECF No. 25. Defendants Iole and Anne Marie also filed a joint Motion to Realign the Parties (ECF No. 13), seeking to realign Defendant Mark as a plaintiff. That motion is also fully briefed. Plf. Opp. Br., ECF No. 22; Def. Mark Opp. Br., ECF No. 23; Defs. Reply Br., ECF No. 28. Finally, Defendant Iole filed a Motion for Leave to File Exhibits Under Seal. ECF No. 12. Plaintiff opposes. ECF No. 18. Defendant Iole replied. ECF No. 21.

Defendant Mark filed a Motion for Enlargement of Time to Answer (ECF No. 4). That motion is granted and his answer (ECF No. 11) is timely.

For the reasons explained below, the Motion to Realign the Parties (ECF No. 13) is denied. Defendant Iole's Motion to Supplement the Notice of Removal, *Instanter* (ECF No. 16) would be futile or duplicative of the Motion to Realign, and, therefore, is denied. Plaintiff's Motion to Remand (ECF No. 7) is granted.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

### A. Factual Allegations

This action concerns two family trusts: the Albert G. Checcone Trust, executed and amended in 1990 ("Albert Trust"), and the Iole C. Checcone Trust, executed and amended in 1990 ("Iole Trust"). The two revocable trusts were executed as part of an estate plan by Albert and Iole Checcone, parents of Plaintiff Emidio and Defendants Mark and Anne Marie. ECF No. 1 at PageID #: 7, ¶ 3. Albert and Iole maintained several accounts and assets through Merrill Lynch to fund both trusts equally. ECF No. 1 at PageID ##: 10–11, ¶¶ 39–44. Emidio was the Co-Trustee for the Albert Trust while Albert was living. ECF No. 1 at PageID #: 7, ¶ 12. After Albert's death, Defendants Mark and Anne Marie were nominated as Co-Trustees of the Albert

2

(4:26CV272)

Trust.  ECF No. 1 at PageID #: 8, ‖ 13.  Only Defendant Mark has formally accepted that nomination.  ECF No. 1 at PageID #: 8, ‖ 14.  Similarly, Emidio was and remains the Co-Trustee of the Iole Trust while Iole is living.  ECF No. 1 at PageID #: 9, ‖ 29.  Emidio, Mark, and Anne Marie are all remainder beneficiaries of the Iole Trust.

On March 20, 2023, Albert and Iole Checcone executed powers of attorney naming Emidio as the Attorney-in-Fact.  ECF No. 1 at PageID #: 11, ‖ 47.  Around this time, Iole's long-suffering mental health had deteriorated to the point that her doctors declared that she lacked that ability make independent medical, financial, or legal decisions.  ECF No. 1 at PageID ##: 9–10, ‖ 33.  Iole's mental health decline is documented in numerous medical records.  ECF No. 1 at PageID #: 11, ‖ 48.

According to Plaintiff, Defendant Anne Marie visited Albert and Iole in December 2024. During that visit, and without Plaintiff's knowledge, Anne Marie convinced her parents to execute new springing powers of attorney ("POAs").  The new POAs named Anne Marie, not Plaintiff, as the Attorney-in-Fact.  Anne Marie also convinced Iole to execute a Health Care Power of Attorney ("HCPOA"), again naming Anne Marie, not Plaintiff, as Attorney-in-Fact. ECF No. 1 at PageID #: 12, ‖‖ 49, 51.  Plaintiff contests both the POA and HCPOA, claiming that Iole lacked the capacity to draft, prepare, or voluntarily sign either document due to her severe dementia diagnosis.  ECF No. 1 at PageID ##: 12–13, ‖‖ 53–59.  He alleges both documents resulted from undue influence and/or fraud.  ECF No. 1 at PageID ##: 12–13, ‖ 59.

In January 2025, Defendant Anne Marie submitted the POA to Merrill Lynch, which rejected the document because it was a "springing" POA, requiring a medical certification of incapacity.  ECF No. 1 at PageID #: 13, ‖ 62.  A Merrill Lynch employee visited Albert and Iole in February 2025 to discuss their trust accounts and to execute several Merrill-specific power of

(4:26CV272)

attorney forms ("Merrill POAs"). ECF No. 1 at PageID #: 13, ¶ 63. After receiving Merrill POAs for both Albert and Iole, Defendant Anne Marie allegedly directed Merrill Lynch to close Albert's individually titled CDs and transfer the proceeds into the trust accounts, resulting in asset ownership restructuring, additional management fees, and significantly increasing potential risk exposure without notifying or consulting with Plaintiff, ECF No. 1 at PageID #: 13, ¶ 66, the Co-Trustee for both the Albert Trust and Iole Trust. ECF No. 1 at PageID ##: 7, 9, ¶¶ 12, 29.

After Albert's death on May 20, 2025, Defendant Anne Marie allegedly sought written certification of Iole's incompetency from her physicians to "spring" the POA and HCPOA. ECF No. 1 at PageID #: 16, ¶¶ 80–81, 83. Since their father's death in May 2025, Plaintiff has been unable to obtain information regarding the Albert Trust assets and accounts. ECF No. 1 at PageID #: 17, ¶¶ 90–92.

### B. Procedural History

Plaintiff filed this action in the Probate Court of Mahoning County, Ohio. ECF No. 1. Service of summons and the complaint were completed using certified mail through the United States Postal Service and consistent with Ohio Civ.R. 4.1. Defendant Anne Marie acknowledges that service of process was mailed certified to all Defendants through the United States Postal Service on December 15, 2025. ECF No. 6 at PageID #: 258. Defendant Mark was served on December 20, 2025; Defendant Anne Marie was purportedly served on December 26, 2025.[2] ECF No. 6 at PageID #: 258. Defendant Iole provided evidence that she was successfully served through USPS certified mail on January 2, 2026. ECF No. 5-2. Although both Defendants Iole

---

[2] Neither Defendants Iole or Anne Marie provided the Court with the Mahoning County Probate Court docket summary or evidence of service attempts on other either Anne Marie or Mark.

4

(4:26CV272)

and Anne Marie have raised insufficient service of process defenses under Fed. R. Civ. P. 12(b)(5), *see* ECF No. 5 and ECF No. 6,[3] Defendant Iole timely filed the Notice of Removal. ECF No. 1.

Defendant Mark Checcone moved for an enlargement of time to answer the complaint. ECF No. 4. He subsequently filed his Answer (ECF No. 11) on February 25, 2026. The motion for enlargement of time to answer (ECF No. 4) is granted and Mark's Answer (ECF No. 11) is timely. In response to the Notice of Removal, Plaintiff timely filed a Motion to Remand (ECF No. 7), raising the unanimity issue. ECF No. 7 at PageID ##: 282–83. Specifically, Plaintiff alleges that neither Defendants Anne Marie nor Mark consented to removal.

In response, Defendant Iole filed a Motion for Leave to Supplement the Notice of Removal *Instanter* (ECF No. 16), amending the Notice of Removal to include the following:

18. Co-Defendant Mark Checcone's consent to removal is not necessary, as he should be realigned as a party plaintiff, or in the alternative, a nominal party.

19. Co-Defendant Anne Marie Checcone's consent to removal is not necessary, as she has not yet been properly served.

20. Co-Defendant Anne Marie Checcone, regardless, has indicated her consent to removal.

ECF No. 16 at PageID #: 359. In addition, and as noted in the proposed supplement, Defendants Iole and Anne Marie jointly move to realign Defendant Mark Checcone as a party plaintiff (ECF No. 13), arguing that his interests are aligned with Emidio's, evidenced by his Answer (ECF No. 11), in which he prays the Court to grant all relief sought in favor of Plaintiff.

## II.    STANDARD OF REVIEW

---

[3] Because this case is remanded, the Court lacks jurisdiction to resolve these pending motions at ECF No. 5 and ECF No. 6.

5

(4:26CV272)

A defendant may remove a civil action filed in state court under 28 U.S.C. § 1441, when there is either diversity jurisdiction, pursuant to 28 U.S.C. § 1332, or the claims involve a federal question, as defined in 28 U.S.C. § 1331.  Notice of removal must be filed within 30 days after a defendant receives the initial pleadings through service (or otherwise) or notice that a previously unremovable case is now removable.  28 U.S.C. § 1446(b)(1) and (b)(3).  A party seeking removal bears the burden of establishing its right to removal.  *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 549 (6th Cir. 2006).  Thus, it is the removing party's burden to show subject matter jurisdiction (either federal question or diversity) exists at the time of removal.  *Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007) (citing *Eastman*, 438 F.3d at 549–40).  Application of "the removal statute should be strictly construed and all doubts resolved in favor of remand."  *Eastman*, 438 F.3d at 549–40 (citing *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996)); *Mays v. City of Flint, Mich.*, 871 F.3d 437, 442 (6th Cir. 2017) (citing *Harnden*, 496 F.3d at 581).

### III.     DISCUSSION

Plaintiff advances two primary arguments to support his Motion to Remand: (1) the Notice of Removal is procedurally deficient under the rule of unanimity; and (2) the Notice of Removal fails to demonstrate Defendant Iole's state of citizenship, as required for diversity jurisdiction under 28 U.S.C. § 1332.  In addition, Plaintiff complains that the Notice of Removal is deficient because it does not include all exhibits—in particular, Defendant Iole's medical records—attached to the state-court pleadings.

**A.  Diversity jurisdiction**

The Court begins, as it must, with subject matter jurisdiction.  In diversity jurisdiction cases, the citizenship of the parties must be sufficiently diverse and the amount in controversy

6

(4:26CV272)

must exceed $75,000.  28 U.S.C. § 1332.  "Under [§ 1332], there must be complete diversity such that no plaintiff is a citizen of the same state as any defendant." *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010) (citing *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)).  The citizenship of a natural person equates to his domicile.  *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990).  "For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (citing *Texas v. Florida*, 306 U.S. 398, 424 (1939)); *Deasy v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 47 F. App'x 726, 728 (6th Cir. 2002) (citing *Gilbert v. David*, 235 U.S. 561, 569–70 (1915)) ("To acquire a domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere.").  A person's previous domicile is not lost until a new one is established.  *Von Dunser*, 915 F.2d at 1072.  When determining a party's domicile, the Court must look to the totality of the evidence; subjective statements of intent will not outweigh objective evidence to the contrary.  *Smith v. Smith*, 526 F. Supp. 3d 263, 274–75 (E.D. Mich. 2021) (citing *Willis v. Westin Hotel Co.*, 651 F. Supp. 598, 601 (S.D.N.Y. 1986)).

Here, the parties agree that Plaintiff is a citizen of California, Defendant Mark is a citizen of Florida, and Defendant Anne Marie is a citizen of Washington.  At issue is Defendant Iole's citizenship.  It is undisputed that Defendant Iole was an Ohio citizen until Defendant Anne Marie moved her to Seattle, Washington in June 2025.  ECF No. 1 at PageID #: 19, ⁋⁋ 105–10.  The parties disagree as to whether Iole is sufficiently competent to establish Washington as her new domicile.

(4:26CV272)

In general, there is a rebuttable presumption that an individual adjudged incompetent is incapable of forming the necessary intention to establish a new domicile.  *See Long v. Sasser*, 91 F.3d 645, 647 (4th Cir. 1996) (citing *Coppedge v. Clinton*, 72 F.2d 531 (10th Cir. 1934) and *McCampbell v. McCampbell*, 13 F. Supp. 874 (W.D. Ky. 1936)); *see also* Wright & Miller, 13E Fed. Prac. & Proc. Juris. § 3616 (3d ed.) ("As a general rule, the incompetent's last-acquired domicile prior to the onset of the incapacity is preserved until that person again has the capacity to make a reasoned decision as to where [s]he desires to live.").  If, however, an individual has sufficient capacity to understand the nature and effect of their actions in choosing a home, even if they have been adjudged incompetent or appointed a guardian, that is sufficient competency to establish a new domicile.  *See Juvelis by Juvelis v. Snider*, 68 F.3d 648, 655 (3d Cir. 1995) (quoting *Estate of Freeman v. Dep't of Revenue*, No. 2784, 1989 WL 23045, at *3 (Or. T.C. Mar. 9, 1989)) ("The actual mental capacity required for selection of a domicil[e] of choice has been held to be much less than that required generally for the management of an individual's affairs."); *see Coppedge*, 72 F.2d at 533 ("Whether an incompetent may change [her] domicile depends on the extent to which his reason is impaired. . . . It is sufficient if [s]he understands the nature and effect of [her] act.").  The burden of showing an incompetent individual has sufficient capacity to change domicile is on the party asserting it.  *See Long*, 91 F.3d at 647; Wright & Miller, 13E Fed. Prac. & Proc. Juris. § 3616 (3d ed.) ("[T]he ultimate burden of persuasion on the subject matter jurisdiction issue remains on the party invoking diversity of citizenship.").

Plaintiff insists that Defendant Iole lacks sufficient competency to establish a new domicile in Washington and that Defendant Anne Marie moved Iole without informing or obtaining consent from Plaintiff or Defendant Mark, both of whom claim willingness to house and care for Iole.  ECF No. 1 at PageID #: 19, ¶ 107.  He further argues that Defendant Anne

8

(4:26CV272)

Marie cannot rely on the springing POA or HCPOA because they are invalid, having been executed *after* Defendant Iole's physicians determined she was unable to make independent medical or legal decisions.  ECF No. 7 at PageID #: 286.

Defendant Iole retorts that she is competent enough to establish a new domicile and has done so by moving into her daughter's home in Washington with no intention of returning to Ohio.  Def. Anne Marie Aff., ECF No. 6-1; Def. Iole Aff., ECF No. 5-1; ECF No. 14 at PageID #: 338.  She also argues that no court has declared her legally incompetent.  As further evidence of her competency for diversity purposes, Defendant Iole states that she appeared before Mahoning County, Ohio Probate Magistrate Jeff Joseph and successfully filed a Spousal Election to Take Against the Will of Albert Checcone.  ECF No. 14 at PageID #: 341.  According to Defendant Iole, the magistrate would not have accepted her filing if she was legally incompetent. ECF No. 14 at PageID #: 341.

The Court need not belabor the issue because the parties are complete diverse regardless of whether Defendant Iole is a citizen of Washington or a citizen of Ohio.  There are no factual allegations demonstrating that Defendant Iole resides in California or has the intent to remain in California.  Nevertheless, the Court agrees with Defendant Iole.  While her treating physicians may have certified that she is unable to make independent medical and legal decisions for herself, no court has adjudged Iole to be incompetent.[4]  Even considering her purported reduced mental capacity, Defendant Iole has provided sufficient evidence, in particular a Spousal

---

[4] The Court does not make any findings as to when such certifications occurred, nor should the Court's conclusion regarding Defendant Iole's competency to establish a new domicile in Washington be construed as a ruling on the merits of Plaintiff's prayer for a declaration declaring Defendant Iole incompetent within the meaning of the Iole Trust.

9

(4:26CV272)

Election to Take Against the Will successfully executed before an Ohio probate court magistrate (*see* ECF No. 14 at PageID #: 341), demonstrating that she has sufficient capacity to understand the nature and consequences of her actions in relocated to Washington and establishing that state as her new domicile.  Therefore, the Court has subject matter jurisdiction based on diversity.

### B.  Rule of unanimity

In addition to satisfying the requirements for subject matter jurisdiction, a notice of removal is only proper if it comports with the rule of unanimity, a doctrine derived from the removal statute's text.  *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 516 (6th Cir. 2003); 28 U.S.C. § 1446.  The unanimity rule requires that "all defendants who have been served or otherwise properly joined in the action must either join in the removal, or file a written consent to removal." *Loftis*, 342 F.3d at 516 (quoting *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 n.3 (6th Cir. 1999)).  In the Sixth Circuit, the rule of unanimity is satisfied if all served or properly joined defendants: (1) join in the removal; (2) file written consent to removal; or (3) oppose a motion to remand.  *City of Cleveland v. Ameriquest Mort. Sec. Inc.*, 615 F.3d 496, 501 (6th Cir. 2010) (citing *Brierly*, 184 F.3d at 533 n.3).  "Failure to obtain unanimous consent forecloses the opportunity for removal." *Loftis*, 342 F.3d at 516.  The Court may not raise the rule of unanimity *sua sponte*, rather, only if the issue is raised in a motion to remand. *Page v. City of Southfield*, 45 F.3d 128, 133 (6th Cir. 1995); *see Nessel on behalf of People of Mich. v. Enbridge Energy, LP*, 104 F.4th 958, 968 (6th Cir. 2024) (recognizing that the jurisdictional statutory cutoffs in § 1446(b) are procedural and may be waived if not timely raised in a motion to remand.). "All doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

10

(4:26CV272)

Plaintiff raised the unanimity issue in his Motion to Remand (ECF No. 7 at PageID ##: 282–83), and, therefore, the Court must consider whether the Notice of Removal is procedurally deficient.  In addition to Joint Opposition to the Motion to Remand (ECF No. 14), Defendants Iole and Anne Marie seek to realign Defendant Mark as a party plaintiff to obviate the need for his consent.  ECF No. 13.  In addition, Defendant Iole moved to supplement the Notice of Removal *Instanter* (ECF No. 16), adding an additional claim that Defendant Anne Marie was not properly served and, therefore, her consent was not required.

Because the Court concludes that Defendant Mark should not be realigned as a party plaintiff and is not a nominal party, the Court need not address the issue of Anne Marie's consent.

### C.  Party Realignment

"Party alignment is not solely a function of how the *parties* align themselves; courts may realign the parties to reflect their actual 'interests in the litigation.'" *Evanston Ins. Co. v. Housing Auth. of Somerset*, 867 F.3d 653, 656 (6th Cir. 2017) (citing *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559 (6th Cir. 2010)) (original emphasis).  The Court must consider whether there is a "collision between the interests of the plaintiff and the interests of the [defendant] as originally aligned" and, if so, whether that "collision" relates to the "primary and controlling matter in dispute." *U.S. Fidelity & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992) (quoting *Indianapolis Gas v. Chase Nat'l Bank of New York*, 314 U.S. 63, 69 (1941)).  Courts must "look beyond pleadings, and arrange the parties according to their sides in the dispute." *Fairmount Prop., LLC v. College Town Kent, LLC*, No. 5:20-cv-320, 2020 WL 2519664, at *2 (N.D. Ohio May 18, 2020) (Boyko, J.) (citing *Indianapolis Gas*, 314 U.S. at 69);

11

(4:26CV272)

pleadings' and the 'nature of the controversy,' courts must group parties with similar interests on the same side of the suit and pit them against parties with competing interests.").

In *Evanston*, the primary controversy involved a $4 million judgment against the Housing Authority of Somerset concerning the negligent maintenance of the property that resulted in death. 867 F.3d at 655. Evanston Insurance Company filed a declaratory judgment complaint in federal court against the housing authority, the housing authority's policy fund, and the families of the decedents seeking to limit its liability to $1 million. *Id*. The family challenged subject matter jurisdiction, claiming the housing authority and the policy fund should have been realigned as plaintiffs, thus destroying diversity. *Id*. at 655–56. The Sixth Circuit disagreed, concluding that the primary dispute was whether the policy limits were $1 million and, therefore, Evanston's interests diverged from all defendants in that case, making realignment inappropriate. *Id*. at 656.

In contrast, in *Cleveland Housing*, the Sixth Circuit held that realignment as warranted. In that case, an Ohio resident brought a public nuisance action against Deutsche Bank, several affiliated companies, and the City of Cleveland, regarding numerous vacant properties owned by Deutsche Bank. 621 F.3d at 556. Deutsche Bank removed the case to federal court and argued that the City of Cleveland should be realigned as a party plaintiff, thus preserving diversity jurisdiction. *Id*. at 559. The Sixth Circuit agreed, finding the primary controversy in the case concerned abating nuisances caused by Deutsche Bank's maintenance of vacant properties, a purpose to which the City was not adverse. *Id*. The court explained that because the City had imposed liens on some of the properties at issue was an ancillary issue to the primary nuisance controversy. *Id*. at 560.

12

(4:26CV272)

According to Defendants Iole and Anne Marie, Defendant Mark's Answer (ECF No. 11) evinces that he is fully aligned with Plaintiff's position in this case.  ECF No. 13 at PageID #: 327.  They argue that Mark's answer mirrors the prayer for relief and, in particular, seeks "judgment in favor of Plaintiff . . . on each and every claim and count of the Complaint." *See* ECF No. 11 at PageID #: 310.  Both Iole and Anne Marie point out that Mark seeks to invalidate the contested POA and HCPOA granting Anne Marie authority to care for Iole and seeks to remove Anne Marie as co-trustee of the Albert Trust.  ECF No. 13 at PageID #: 328.

Plaintiff and Defendant Mark counter that the primary dispute concerns the proper administration and governance of the Trusts, which includes Mark's rights, duties, and potential liabilities as co-trustee and remainder beneficiary.  ECF No. 22 at PageID #: 415.  Mark argues that, as a fiduciary of the Albert Trust, he has a duty to ensure the proper administration of the trust, but that the parties may differ in what proper administration entails.  ECF No. 23 at PageID #: 425.  Similarly, Plaintiff argues that the issues in this case are directly relevant to Mark's interests as an independent fiduciary for the Albert Trust, and that those interests may be potentially averse to Plaintiff's.  ECF No. 22 at PageID #: 416.

Considering the Complaint, the relief sought, and the nature of the claims alleged, the Court agrees with Plaintiff and Defendant Mark that the primary issue in this case concerns the proper administration and governance of the Albert Trust and Iole Trust.  The more narrow issues challenging Iole's competency, Anne Marie's alleged undue influence over her parents in executing the contested powers of attorney, and whether Anne Marie improperly moved trust assets are all secondary issues under the "proper trust administration" umbrella.  While Plaintiff's and Defendant Mark's interest concerning those secondary issues appear aligned, that does not lead to a reasonable inference that they are aligned as to the general administration of

13

(4:26CV272)

the trusts.  Rather, it indicates that Mark found Plaintiff's claims concerning those secondary issues to be well taken.

Concerning the primary controversy, it is not evident that Mark and Plaintiff share sufficient interests to warrant realignment.  In general, all three Checcone children could be said to share (or should share) in the desire for the trusts to be administered properly and in accord with their documents.  They are each a co-trustee of the Albert Trust and remainder beneficiaries of the Iole Trust and each has a fiduciary duty concerning the execution and administration of both trusts.  *See Smith v. Nelson*, 86 F. Supp. 2d 787, 788–89 (N.D. Ohio 2000) (collecting cases) (holding that, "[u]nder Ohio law . . . a trustee has a duty to defend the trust property" and, therefore, "are real parties in interest.").  But that does not mean their interests align as to how the trusts are administered and managed.  This is particularly true concerning the relief sought for a judgment reversing certain changes to the trust assets made by Anne Marie and declaring certain assets titled to each trust.[5]  ECF No. 1 at PageID #: 23 (Prayer for Relief).  Because Mark and Plaintiff may have competing interests regarding the allocation of such assets, realignment is not appropriate.

Iole's and Anne Marie's attempt to characterize Mark as a nominal party fails for the similar reasons.  ECF No. 13 at PageID #: 331.  As a co-trustee of the Albert Trust, and a remainder beneficiary of the Iole Trust, Mark holds a fiduciary position and, as such, has

---

[5] Moreover, the Court has serious doubts as to whether it may exercise jurisdiction to declare the assets titled to each trust at issue under the probate exception.  Such relief invokes *in rem* jurisdiction and would likely require the Court to "elbow its way into a fight over a property" already under the Mahoning County Probate Court's control.  *See Johnson v. Johnson*, 157 F.4th 813, 819 (6th Cir. 2025) (citing *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 802 (6th Cir. 2015)).  Regardless, because there is no unanimous consent to removal, the Court need not resolve that issue.

14

(4:26CV272)

fiduciary duties and responsibilities to defend the trust property.  *Smith*, 86 F. Supp. 2d at 789.

Accordingly, he is not a nominal party but an interested party.

For these reasons, the Motion to Realign the Parties (ECF No. 13) is denied.

### D.  Leave to Supplement

Defendant Iole also moved for leave to supplement the Notice of Removal (ECF No. 16), seeking to add three claims: (1) Mark should be realigned as a party plaintiff or else designated as a nominal party; (2) Anne Marie was not properly served and, therefore, her consent to removal was not required; and (3) Anne Marie consents to removal in any event.  ECF No. 16 at PageID #: 359.

In the Sixth Circuit, a notice of removal may be amended "under the same considerations governing the amendment of any other pleading containing jurisdictional allegations." *Courtney Southers v. Appalachian Reg. Healthcare, Inc.*, No. 7:20-cv-126, 2021 WL 1250315, at *2 (E.D. Ky. Apr. 5, 2021) (quoting *Gafford v. Gen. Electric Co.*, 997 F.2d 150, 164 (6th Cir. 1993)). Under Rule 15, leave to amend should be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  As stated by the Supreme Court:

> In the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *Greer v. Strange Honey Farm*, 114 F.4th 605, 617 (6th Cir. 2024).  Rule 15(a) makes clear that the court has discretion when deciding whether to permit amendments.  *Hemlock Semiconductor Corp. v. Deutsche Solar GmbH*, 116 F. Supp. 3d 818, 837 (6th Cir. 2015) ("Decisions as to when justice requires amendments are left to the sound discretion of the trial judge.").  "A court need not grant leave to amend when doing so

(4:26CV272)

would be futile." *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 244 (6th Cir. 2019) (citing *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017)).

In this case, because Defendant Mark does not consent to removal, the Court lacks jurisdiction to resolve this case. Nothing in Defendant Iole's proposed amendment cures this defect. The Motion for Leave to Supplement the Notice of Removal (ECF No. 16) is denied as futile or duplicative of the Motion to Realign. Plaintiff's Motion to Remand (ECF No. 7) is granted.

## IV. CONCLUSION

For the foregoing reasons, Defendant Mark's Motion for Enlargement of Time to Answer (ECF No. 4) is granted. His Answer (ECF No. 11) is timely.

The Motion to Realign Mark Checcone as Party Plaintiff (ECF No. 13) is denied. Defendant Iole's Motion to Supplement the Notice of Removal, *Instanter* (ECF No. 16) is denied as futile or duplicative of the Motion to Realign. Plaintiff's Motion to Remand (ECF No. 7) is granted. Because this case is remanded, the Court lacks jurisdiction to resolve the motions pending at ECF No. 5, ECF No. 6, ECF No. 8, ECF No. 12, and ECF No. 30.

This action is remanded to the Mahoning County Probate Court.

IT IS SO ORDERED.

August 13, 2026                                      */s/ Benita Y. Pearson*
Date                                                          Benita Y. Pearson
                                                                 United States District Judge

16